**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DANNIE L. CUNINGKIN SR.                                                                             PLAINTIFF

v.                                              No. 4:05CV1130 JLH

CITY OF BENTON, ARKANSAS,
A Public Body Corporate and Politic                                                              DEFENDANT

**OPINION AND ORDER**

Dannie Cuningkin, an African-American male, brought race discrimination and retaliation claims against his employer, the City of Benton, pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964), 42 U.S.C. § 1981, and the Fourteenth Amendment to the United States Constitution. The defendant has filed a motion in limine, but because the motion seeks a determination that no genuine issue of material fact exists as to the issues raised, the Court will treat it as a motion for summary judgment.[1] For the reasons stated below, this motion is denied.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003). When the

---

[1] The Court advised the parties that it would treat this motion as one for summary judgment through a letter to the parties' attorneys on September 26, 2006.

moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985) (quoting FED. R. CIV. P. 56(e)). The non-moving party sustains this burden by showing that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment. *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001) (citing *Rabuska v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)). If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).

The Eighth Circuit has said that summary judgment should seldom be granted in discrimination cases where inferences are often the basis of the claim. *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004) (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J. dissenting).

**I.**

Dannie Cuningkin is a Meter Reader for the City of Benton's Utilities Department,

subdepartment of Water & Lights.  He has held this position since 1988.

In 2002, the City entered into a collective bargaining agreement with the American Federation of State, County and Municipal Employees ("AFSCME").  This agreement provides in pertinent part:

**ARTICLE XI**
**SENIORITY**
* * *

**Section 3**  The principles of seniority and necessary qualifications shall govern in promotions, demotions, lay-off, recall, filling vacancies and transfers.

* * *

**Section 4**  Whenever a job opening occurs in any existing job classification or as the result of the development or establishment of new job classifications, a notice of such opening shall be posted . . . .  Qualified applicants, within the department, shall receive preference in filling the open position.  Those employees, that meet the qualifications listed for the job that work outside of the department, shall receive preference if no qualified employee within the department applies.

* * *

The Employer shall fill the vacancy by promoting from among the applicants the senior qualified employee.  Should a question arise as to whether or not the senior employee is qualified, the Union will be notified in writing at least five (5) working days prior to implementation of the promotion and shall have the right to take up the matter as a grievance at the third step of the grievance procedure.

* * *
**ARTICLE XVII**
**TERMINATION**

**Section 1**  This agreement shall be Effective as of the first day of January 2002 and shall remain in full force and effective until the 31st of December 2004.  It shall be automatically renewed from year to year thereafter unless either party shall notify the other in writing at least *(60)* days before the anniversary date that it desires to modify this Agreement.  In the event that such noticed is given, negotiations shall begin at least thirty *(30)* days before the anniversary date; this agreement is provided to the other party in the manner set forth in the following paragraph:

> In the event that either party desires to terminate this Agreement, written notice must be given to the other party not less than ten *(10)* days prior to the desired termination date which, [sic] shall not be before the anniversary date as set forth in the preceding paragraph.

On December 16, 2004, Rick Holland, Mayor of the City of Benton, sent a letter to Terry White, President of AFSCME Local 2957, stating the City's intent to terminate the collective bargaining agreement as follows:

> On September 22, 2003, the Benton City Council approved by a vote of 9 yes 1 absent a recommendation from the Personnel Committee to allow the current contract to expire. In reference to Article XXII of the current Union Agreement, I am giving the ten (10) day prior notice to termination of the agreement on December 31, 2004.

Cuningkin contends, however, that the City told its employees that the terms of this agreement would remain in effect until the City adopted a personnel policy manual and that the manual was adopted on December 19, 2005.

During the spring of 2005 the Utilities Department announced a job vacancy for Customer Service Representative. Cuningkin and J. B. Barnes, a white male, both applied. Cuningkin asserts that he has worked for the Water & Lights department longer than Barnes and thus has more seniority. He also contends that the City has a custom and practice of promoting the employee with the most seniority for vacant positions. Barnes was selected for the position, however, and Cuningkin sent a letter of complaint to Holland, protesting the fact that he was not selected.

The City rescinded the job vacancy, created a new job description for the position, and then readvertised the position in the fall of 2005. Cuningkin applied a second time, but Barnes was again selected. Cuningkin then filed this lawsuit, alleging that the City breached the collective bargaining agreement and that he was passed over for the customer service position due to race discrimination and retaliation.

**II.**

The City raises three issues as to which it contends that there is no genuine issue of material fact and that it is entitled to judgment in its favor. First, the City contends that the collective bargaining agreement was terminated at the end of 2004 and thus was not in effect when the customer service position was advertised and filled in 2005. Second, the City asserts that it had no custom or tradition of promoting employees based on seniority. Finally, the City argues that this Court lacks jurisdiction over Cuningkin's retaliation claim because he did not raise this claim before the Equal Employment Opportunity Commission ("EEOC") and thus failed to exhaust his administrative remedy. Each of these issues is addressed separately below.

**A.  Collective Bargaining Agreement**

The City asserts that the letter from Holland to the AFSCME terminated the collective bargaining agreement on December 21, 2004. Cuningkin argues, however, that Holland's letter was not effective to terminate the agreement and, even if it was, the City subsequently renewed the contract and was still bound by its terms.

There is some ambiguity in the agreement inasmuch as it says, on the one hand, that it will automatically renew unless one party gives notice at least sixty days before the anniversary date, and, on the other hand, that either party can terminate with ten days' notice so long as the termination does not occur before the anniversary date. When a contract is ambiguous, parol evidence is admissible to explain its meaning. *C. & A. Constr. Co., Inc. v. Benning Constr. Co.*, 256 Ark. 621, 622, 509 S.W.2d 302, 303 (1974). Here, the only parol evidence submitted is the affidavit of Terry White, President of AFSCME Local 2957.

White testified that "[a]lthough the contract between the city and AFSCME expired in

December 2004, the employees were told by management that the terms of the contract would be in effect until the city adopted a personnel policy manual, which was adopted by the City Council on December 19, 2005."

> There is no general requirement in the law of contracts that a contract or agreement be signed by both parties . . . . [A]n offer . . . is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981). "Unless otherwise indicated by the language or the circumstances, an offer invites acceptance in any manner and by any medium reasonable in the circumstances." Restatement (Second) of Contracts § 30. . . . A manifestation of assent may be made wholly by spoken words or by conduct. *See* Restatement (Second) of Contracts § 19.

*ERC Mortgage Group, Inc. v. Luper*, 32 Ark. App. 19, 22-23, 795 S.W.2d 362, 364 (1990). An employment contract may therefore be formed when an employer offers certain terms and conditions of employment to its employees and the employees accept by performing the duties of their jobs. *See id.* at 21-23, 795 S.W.2d at 363-64 (where employer offered employee a job under certain terms of compensation and the employee worked under these terms for about 6 months, the jury could reasonably find that the employee accepted the employer's offer by his subsequent performance); *Helle v. Landmark, Inc.*, 15 Ohio App. 3d 1, 10-11, 471 N.E.2d 756, 775-76 (1984) (employer's offer of severance pay precipitated the formation of a unilateral contract, and the employees accepted the employer's offer by retaining their employment and rendering performance). Furthermore, a party who knowingly accepts the benefits of a proposed contract is bound by its terms. *James v. P. B. Price Constr. Co.*, 240 Ark. 628, 633, 401 S.W.2d 206, 209 (1966).

The City does not contend that Cuningkin did not perform his job duties during 2005 or that it did not accept the benefits of his service. Viewing the evidence in the light most favorable to Cuningkin, as the Court must for purposes of this motion, the Court concludes that a jury could

reasonably find that the City offered its employees continued employment on the same terms as the allegedly expired collective bargaining agreement and that Cuningkin accepted this offer by performance. *See id.* (whether contractor accepted subcontractor's offer to form construction contract by conduct was a question of fact for the jury). Because questions of material fact exist as to whether the collective bargaining agreement was in effect when Cuningkin was denied the customer service position, the City is not entitled to judgment as a matter of law as to this issue.

**B.     Custom or Tradition of Promotion Based on Seniority**

The City denies that it now has, or ever had, a custom or tradition of promoting employees based on seniority, but it has produced no evidence in support of its position. Cuningkin again points to White's affidavit. White testified that he has been an employee of the City since 1987 and that "[s]ince [his] employment with the City of Benton, the city has always promoted persons based on seniority in the department where the vacancy occurs." Because Cuningkin has produced evidence from which a reasonable jury could find that such a custom or tradition exists, there is a genuine issue of material fact as to the City's customary practices with regard to promoting employees. The City is not entitled to judgment as a matter of law as to this issue.

**C.     Cuningkin's Retaliation Claim**

The City points out that retaliation was not a basis for Cuningkin's EEOC charge[2] and cites *Briley v. Carlin*, 172 F.3d 567 (8th Cir. 1999), for the proposition that "[e]xhaustion of the plaintiff's administrative remedy before the EEOC is mandatory prior to this Court's acquiring jurisdiction." In *Briley*, the Eighth Circuit held that an employee cannot file a lawsuit under Title VII in federal

---

[2] Cuningkin alleged only race discrimination in his May 17, 2005, EEOC Charge of Discrimination, stating that he "was denied the promotion because of [his] race, black, in violation of Tile VII of the Civil Rights Act of 1964, as amended."

7

court "without first exhausting his or her administrative remedies." *Id.* at 571. Cuningkin does not deny that he failed to raise his retaliation claim with the EEOC, but asserts that he may nevertheless bring this claim pursuant to 42 U.S.C. § 1981.

Claims for retaliation can be brought pursuant to 42 U.S.C. § 1981. *See*, *e.g.*, *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1137 (8th Cir. 2006); *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1051 (8th Cir. 2002); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1062-63 (8th Cir. 1997). While the elements of a retaliation claim under Title VII and § 1981 are the same, these statutes are different in some respects. *Kim*, 123 F.3d at 1063. Title VII requires exhaustion of administrative remedies, but § 1981 does not. *Id.* The fact that Cuningkin did not raise his retaliation claim before the EEOC therefore does not preclude him from raising this claim in federal court under § 1981.

## CONCLUSION

Cuningkin has produced evidence establishing the existence of genuine issues of material fact as to whether the collective bargaining agreement was in effect when he was denied the customer service position and whether the City has traditionally promoted employees on the basis of seniority. At trial, Cuningkin may present evidence relevant to these issues as well as his retaliation claim, which he may bring pursuant to 42 U.S.C. § 1981. The City's motion in limine is DENIED. Document #17.

IT IS SO ORDERED this 22nd day of November, 2006.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE