**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DANNIE L. CUNINGKIN SR.                                                                                          PLAINTIFF

v.                                             No. 4:05CV1130 JLH

CITY OF BENTON, ARKANSAS,
A Public Body Corporate and Politic                                                                          DEFENDANT

**OPINION AND ORDER**

This is an employment discrimination case. Dannie Cuningkin, an African-American male, brought race discrimination and retaliation claims against his employer, the City of Benton, Arkansas, pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964), 42 U.S.C. §§ 1981 and 1983, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The defendant has moved for summary judgment. For the reasons stated below, this motion is denied.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003). When the

moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985) (quoting FED. R. CIV. P. 56(e)). The non-moving party sustains this burden by showing that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment. *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001) (citing *Rabuska v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)). If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).

The Eighth Circuit has said that summary judgment should seldom be granted in discrimination cases where inferences are often the basis of the claim. *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004) (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J. dissenting).

**I.**

Dannie Cuningkin is a Meter Reader for the City of Benton's Utilities Department,

subdepartment of Water & Lights. He has held this position since 1988.

During the spring of 2005 the Utilities Department announced a job vacancy for Customer Service Representative, also referred to as a Serviceman position. The job description for this position required that the person selected must have a high school education or GED and a current driver's license, know how to read KWH (kilowatt-hour) and water meters, know how to install and remove an electric KWH meter safely, and have the abilities to deal with disgruntled customers and to detect theft of utility service. Cuningkin and J. B. Barnes, a white male, both applied. Barnes was selected for the position.

On April 27, 2005, Cuningkin sent a letter of complaint to Rick Holland, Mayor of the City of Benton. Cuningkin's letter stated:

> I recently applied for a promotion, Serviceman position. In response to my application I received a letter from [Cindy] Hawkins denying me the position for which I meet all the qualifications that were described in the Job description . . . stating that J. B. Barnes, who worked in this department less than 2 years, was the most qualified because he has experience as an electrical lineman and water pipe fitter of which neither are listed as a job requirement. J. B. Barnes has been given extra credit for what is not considered a requirement for the job. I feel I have been unfairly overlooked for this promotion. The person who previously held this position . . . did not have the experience that I have, neither did he have the electrical lineman and water pipe fitter experience that emphasis was placed on. . . . I feel I have been purposely overlooked and denied this opportunity for advancement. I asked for appeal papers and was informed that there was none.
>
> I have eighteen (18) years of dedicated service to this department. In the past seniority has always played a key role in the promotional process. It is discouraging to know that this is no longer applicable as told to me by Cindy Hawkins. There seems to be a gross disparity in treatment in this facility. I am unsatisfied with the decision and I am asking to be reconsidered for this position/promotion for which I feel I'm a highly qualified applicant. At present, I think that 18 years of experience in this area would outweigh the non-required experience that you place so much emphasis on. By your staff's report Cindy Hawkins, I have been a valuable employee. This is the door for advancement I applied for, not some future placement/ position that was suggested there might be. Again, I would like for you

to reconsider your decision.

Kathy Kirk, Director of Human Resources for the City of Benton, responded in writing on May 4.  Kirk's memorandum to Cuningkin stated:

> Mayor Holland has asked me to reply to your letter of April 27 concerning your seniority with the City and past past [sic] practice (under Union contract agreement) of promoting based on the senior qualified person in the department.  The decision was being revisited per your request.
>
> However, effective Monday night, the Utilities Commission indefinitely delayed the creation of the position that the current Customer Services Representative had hoped to accept.  Therefore, any opening is negated at this time.
>
> Thank you for expressing your concern.  I assure you that we value our employees and want to foster an atmosphere of equal opportunity in all areas of employment.

Kirk testified in an affidavit that, while the City was reconsidering the decision to award the Customer Service Representative position to Barnes, the Utility Commission discussed "rewriting of job descriptions" and decided in a meeting on May 2, 2005, that all job postings would be discontinued until revision of job descriptions was complete.  Kirk further testified that this "moratorium" on job postings was a response to an effort to rewrite almost 80 job descriptions, including the Customer Service Representative position.  Kirk stated that this project had begun in November 2004, when she sent a memorandum to the City's department heads asking for new job descriptions, but it took over a year to complete the task.

The defendant has produced the minutes of the Utility Commission's May 2 meeting.  The minutes show that the Utility Commission had a discussion about the salary and job description for a position described as Hawkins's "assistant," which Hawkins wanted to award to an employee named Greg Gladden.  Upon some disagreement as to how to determine the salary for that position, a suggestion was made to "up-date the job description, create a job description with salary available,

and also address the meter reader job where there [was] a challenge." A motion was then made to "stop all job postings until [the Commission got] a job description," which was unanimously approved.

On May 17, Cuningkin filed a Charge of Discrimination with the EEOC, alleging that he was denied the promotion because of his race. In this complaint, Cuningkin stated:

> Although the [defendant's] policy and practice is to promote based on department and seniority, by letter dated April 25, 2005, I was advised that the position had been given to a white coworker with less seniority.
>
> My supervisor indicated that the position was given to "the most qualified applicant who has many years experience as an electrical lineman and water pipe fitter as well as customer service and public relations experience."

The City rescinded the Customer Service Representative vacancy and created a new job description for the position. The new job description required basic electrical knowledge of meter and breaker boxes, basic knowledge of computer fundamentals and business software, effective oral and written communication skills, the ability to pull and install meters and breaker boxes safely, and the ability to observe and adjust for environmental safety hazards.

Sometime in September or October 2005, the City re-advertised the Customer Service Representative position. Cuningkin applied a second time, but Barnes was again selected. Hawkins, who is a supervisor in the City's Electric Department, was the decision-maker as to this position.

Hawkins testified in her affidavit that she selected Barnes because he had the requisite computer skills, that Cuningkin did not possess such skills, and that she made her decision based on the job criteria, not based on race. Cuningkin, however, asserts that he has the requisite computer skills and that he informed Hawkins of this fact. Cuningkin testified in this deposition that he told Hawkins that he "had enough sense to go and check [his] email as such as things like that," but that

he had no experience "as far as billing on a route."

Barnes testified in his deposition that in performing the Customer Service Representative job he uses a computer to "enter notes on it occasionally." Some days he does not use the computer at all. Dealing with service tickets and customers who do not pay their bills comprises 80 to 90 percent of his work. When asked if he uses "census software for downloading reading boxes," Barnes testified that he did when he first began the Customer Service Representative job, but now he hardly ever does so because other employees, including Cuningkin, perform this function.

When Cuningkin was asked in his deposition if he had any reason to believe that Hawkins discriminates against African-Americans, Cuningkin said that he did. He testified that on one occasion Hawkins told him she had heard complaints about him driving a city truck over the weekends. When Cuningkin denied having done so, Hawkins allegedly stated, "Well, Dannie, being black, you're easily picked out." Cuningkin further testified:

> Then she went on to tell me about a guy that she seen in the store one day, that a black man was in a store and that he wasn't bothering nobody, and a little kid used the N word on him. I said, Well, Ms. Hawkins, you didn't have to use it. She said that the guy called – the little boy called the man a nigger. That's what she said. I said, Well, Ms. Hawkins, you didn't have to say that word. You could have said the N word. So she said, Well, Dannie, he did. He called him a nigger, after I done asked her to use the N word.

## II.

As noted above, Cuningkin has asserted claims of race discrimination and retaliation against the defendant. The defendant's motion for summary judgment does not specify whether it seeks summary judgment as to the race discrimination claim, the retaliation claim, or both. The defendant states in its brief in support of its motion for summary judgment, however, that "the sole issue is whether Cindy Hawkins was motivated by racial discrimination in promoting J. B. Barnes, who is

6

White, to the job of Customer Service Representative instead of the plaintiff, who is African-American," and the arguments in that brief relate entirely to this issue. The word "retaliation" does not appear in either the defendant's motion for summary judgment or its supporting brief. Although the defendant argues in its reply to Cuningkin's response that Cuningkin "has failed to meet proof with proof regarding the retaliation claim," Cuningkin could not be expected to respond to an issue that was not raised, and the Court will not address issues raised for the first time in a reply brief. Accordingly, the Court will address only whether the defendant is entitled to summary judgment as to Cuningkin's race discrimination claim.

**A.     Direct-Evidence Analysis Under *Price Waterhouse v. Hopkins***

Claims of race discrimination based on direct evidence are analyzed under the mixed-motives analysis of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989). Under *Price Waterhouse*, if the plaintiff persuades the factfinder that, more likely than not, discrimination was "'a motivating part in an employment decision,'" the burden then shifts to the defendant to show that the employment decision would nevertheless have been made for a legitimate, nondiscriminatory reason. *Yates v. McDonnell Douglas*, 255 F.3d 546, 548 (8th Cir. 2001) (quoting *Price Waterhouse*, 490 U.S. at 258). "To be entitled to this direct-evidence analysis, however, [the plaintiff] must present 'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision.'" *Id.* (quoting *Rivers-Frison v. Southeast Mo. Comm. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998)).

Racially derogatory statements can, in some situations, serve as direct evidence of racial

discrimination sufficient to trigger the *Price Waterhouse* analysis. *Id.* at 549. Not all comments that reflect a discriminatory attitude, however, are sufficiently related to an adverse employment action to support an inference of racial discrimination. *Id.* Direct evident of racial discrimination is not established by "'stray remarks in the workplace'" or "'statements by decision-makers unrelated to the decisional process itself.'" *Id.* (quoting *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir. 1991)).

Although Cuningkin has produced evidence that Hawkins, the decision-maker in this case, made comments related to Cuningkin's race, he has produced no evidence that these comments were related to the process of deciding who to promote to the Customer Service Representative position. Hawkins's alleged statement that Cuningkin is "easily picked out" because he is black was made in the context of a complaint that Cuningkin had allegedly driven a city truck during the weekends. Her alleged statements that she had observed a white child calling an African-American man by a racially derogatory term did not relate to Cuningkin's employment with the City or the Customer Service Representative position. Cuningkin does not assert that Hawkins directed any racially derogatory terms toward him or that she expressed approval of other persons using such slurs toward African-Americans. Moreover, even assuming that the conversation occurred as Cuningkin testified, it represents an isolated incident, as Cuningkin has produced no evidence that any other race-related comments were ever made. While Hawkins's comments may have been offensive to Cuningkin, these statements do not constitute direct evidence of race discrimination and Cuningkin therefore is not entitled to a direct-evidence analysis of his race discrimination claim. *See Arraleh v. County of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006) (supervisor's comment to the plaintiff that "black people are expected to leave their blackness behind" was at most "an ambiguous statement by a decisionmaker unrelated to the decisional process" and thus did not constitute direct evidence of

discrimination); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) (supervisor's "alleged 'Uncle Tom' comments, while racially offensive and misguided, were . . . not in relation to deciding to terminate" the plaintiff).

### B. Burden-Shifting Framework of *McDonnell Douglas Corp. v. Green*

Claims of racial discrimination based upon circumstantial evidence are analyzed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). First, the plaintiff bears the burden of establishing a *prima facie* case of racial discrimination, which means that he must demonstrate the following four elements: (1) that he belongs to a protected class; (2) that he was qualified and applied for a promotion to an available position; (3) that he was rejected; and (4) that a similarly qualified employee, not part of a protected class, was promoted instead. *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998). If the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination is created. The employer may rebut this presumption by articulating one or more nondiscriminatory reasons for the employment decision. *See id.* at 1110. When the *prima facie* case has been successfully rebutted, the presumption of discrimination drops out of the picture, and the burden shifts back to the plaintiff to present evidence sufficient to support two findings. *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1127 (8th Cir. 1998). First, the plaintiff must present evidence that creates a fact issue as to whether the employer's proffered reasons are mere pretext. *Id*. Second, the plaintiff must present evidence that creates a reasonable inference that the adverse employment decision was an act of intentional discrimination based on race. *Id*. *See also Robinson v. Sears, Roebuck and Co.*, 111 F. Supp. 2d 1101, 1112 (E.D. Ark. 2000).

The first and third elements of the prima facie case are not in dispute: Cuningkin, an

African-American, is a member of a protected class, and he was not selected for the Customer Service Representative position. Whether Cuningkin has established a prima facie case of race discrimination thus turns on the second and fourth elements.

As to the second element, the parties agree that Cuningkin applied for an advertised position, but the defendant argues that Cuningkin was not qualified because he lacked the requisite computer skills. For purposes of establishing a prima facie case, Cuningkin need not prove that he was more qualified than Barnes; he is required only to produce evidence showing that he met the minimum objective job qualifications. *See Legrand v. Trustees of Univ. of Ark. at Pine Bluff*, 821 F.2d 478, 481 (8th Cir. 1987). "[T]he threshold of proof necessary to make a prima facie case is minimal." *Rose-Maston*, 133 F.3d at 1109-10.

Hawkins testified in her affidavit:

> [O]ne of the job criteria [was] "Basic knowledge of computer fundamentals and business software." J. B. Barnes worked very hard to become proficient, studying at night, after hours, and on weekends to master this task. Although I made the same point to Mr. Cuningkin, even pointing him to a local adult-education facility which taught computers skills, he failed and refused to heed my suggestion.

Hawkins did not specify which computer functions or software programs were involved, and the defendants have produced no other evidence on this point. Cuningkin testified in his deposition that he had the ability to use email and "things like that," but that he had no experience with billing. Barnes testified in his deposition that Cuningkin now uses "census software for downloading reading boxes" on a "daily" basis. Viewing this evidence in the light most favorable to Cuningkin, as the Court must for purposes of this motion for summary judgment, Cuningkin has produced evidence from which a jury could reasonably conclude that he possessed the basic computer skills necessary for the job.

Regarding the fourth element, the parties do not dispute that Barnes, a white male, is not a member of a protected class and that he was given the promotion instead of Cuningkin. As discussed above, the defendants argue that Barnes was better qualified, but this is not the standard that applies at the prima facie stage. From the evidence on the record, a jury could reasonably conclude that both men met the minimum objective job qualifications and are thus "similarly qualified" in this respect.

Because Cuningkin has established a prima facie case of race discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision to promote Barnes. The defendant has met this burden by asserting that it hired Barnes because he has superior computer skills in comparison with Cuningkin.

The burden thus shifts back to Cuningkin to establish that this reason is merely pretextual and that race was the true reason for the defendant's decision. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516-17, 113 S. Ct. 2742, 2752-53, 125 L. Ed. 2d 407 (1993) (plaintiff must show that employer's proffered reason is pretext for unlawful discrimination, not that it is merely false in some way). The only evidence tending to suggest that race, as opposed to any other factor, motivated Hawkins's decision is Cuningkin's testimony about a conversation with Hawkins during which his race was mentioned. According to Cunningkin, Hawkins brought up the fact that Cunningkin is black in the context of an inquiry as to whether he had driven a city truck during the weekends. Evidence that Hawkins may have improperly considered Cuningkin's race in another employment context is relevant to the issue of whether she based her decision not to promote him on his race, but any inference of race discrimination raised by this evidence alone is weak.

The Eighth Circuit has held, however, that "an inference of discrimination may sometimes

11

arise 'without additional evidence where the overall strength of the prima facie case and the evidence of pretext suffice[s] to show intentional discrimination.'" *Young v. Warner Jenkinson Co., Inc.*, 152 F.3d 1018, 1023 (8th Cir. 1998) (quoting *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1337 (8th Cir. 1996)).  Although an employer's articulation of a legitimate, nondiscriminatory reason for its actions rebuts the presumption of discrimination created by the prima facie case, the elements of the prima facie case remain and, if accompanied by evidence of pretext and disbelief of the proffered reason, may permit the jury to find for the plaintiff if this evidence is consistent with a reasonable inference of discrimination.  *Ryther v. KARE 11*, 108 F.3d 832, 837 (8th Cir. 1997) (en banc).

Pretext may be demonstrated in several ways.  "Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext[,]" *Kobrin v. Univ. of Minn.*, 34 F.3d 698, 703 (8th Cir. 1994), as does evidence that the employer's proferred reason is dubious, *see Young*, 152 F.3d at 1023.  Evidence that an employer selected a less-qualified candidate also supports a finding that the employer's nondiscriminatory reasons for its decision were pretextual.  *Peterson v. Scott County*, 406 F.3d 515, 523 (8th Cir. 2005).

As discussed in this Court's Opinion and Order[1] of November 22, 2006, Cuningkin previously produced evidence from which a jury could reasonably conclude that the City had a practice of promoting employees based on seniority and that it had a collective bargaining agreement with its employees requiring that the senior qualified employee within a department be promoted when job openings became available.  The parties agree that Cuningkin has worked for the City since 1988, while Barnes testified that he has worked for the City since 1991.  Cuningkin has thus

---

[1] *Cuningkin v. City of Benton, Ark.*, No. 4:05CV1130, slip op. at 2-7 (E.D. Ark. Nov. 22, 2006).

produced evidence that Barnes is less qualified in terms of seniority and that the City did not follow its policy of promoting the senior qualified employee for the Customer Service Representative position. *See Floyd v. Mo. Dep't of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 937 (8th Cir. 1999) ("An employer's failure to follow its own policies may support an inference of pretext.").

Moreover, a jury could infer from the evidence that the City changed its reasons for promoting Barnes instead of Cuningkin and changed the job description to include skills that are not actually needed to perform the Customer Service Representative position. When Cuningkin first applied for the Customer Service Representative position, which was in the spring of 2005, Hawkins informed him that Barnes was selected as the more qualified candidate because Barnes had experience as an electrical lineman and pipe fitter. The job description as it then existed mentioned neither these skills nor computer skills as job requirements. After Cuningkin challenged Barnes's promotion, the City rescinded the opening and created a new job description. The new job description included computer skills as a requirement, but did not include skills as an electrical lineman or pipe fitter. When Barnes was chosen a second time for the promotion, Hawkins's stated reason for her selection was that Barnes had superior computer skills.

Of course, an employer has wide discretion to establish its requirements and qualifications for particular positions, so long as these requirements do not discriminate based upon impermissible characteristics such as race. *See Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1047 (8th Cir. 2002); *Duffy v. Wolle*, 123 F.3d 1026, 1037-38 (8th Cir. 1997). The Eighth Circuit has often noted that "'employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.'" *Duffy*,

13

123 F.3d at 1038 (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995)).

Cuningkin argues, however, that the computer skills requirement is not a bona fide requirement for the Customer Service Representative position but was established for pretextual reasons. In support of this contention, Cuningkin points to Barnes's testimony that he uses the computer only "occasionally" to type notes on contacts with customers. Barnes further testified that he spends the majority of his time "out in the field," as dealing with service tickets and "nonpays" comprises 80 to 90 percent of his work. One task that he formerly performed on the computer is now performed by other employees, including Cuningkin. A jury could conclude that only rudimentary computer skills are needed and that this function comprises a very small part of the Customer Service Representative's job, which casts doubt upon the defendant's asserted reasons for the revision of the job description and Barnes's promotion.

The defendant has produced evidence that Hawkins was not racially biased and that she based her decision solely on job qualifications, and the jury may find this evidence convincing. The role of the Court in deciding whether to grant a motion a motion for summary judgment is not to determine the credibility of the witnesses, however, but to determine whether the non-moving party has produced evidence from which a jury could reasonably find in that party's favor. Viewing the evidence in the light most favorable to Cuningkin, a jury could reasonably find that the defendant's asserted reason for promoting Barnes instead of Cuningkin was a pretext for race discrimination.

**Conclusion**

Cuningkin has produced evidence sufficient to show that a genuine issue of material fact exists as to whether he was denied the promotion to the Customer Service Representative position due to his race. The defendant's motion for summary judgment is therefore DENIED.

IT IS SO ORDERED this 5th day of March, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE